**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

RONALD I. LEVINE
P.O.B. 294
Wycoff, NJ 07481

Ronald I. LeVine, Esq.
*Attorneys for Debtor, Carmen Saro*

In Re:

**CARMEN SARO,**

                    Debtor.

**CARMEN SARO,**

            Plaintiff,

vs.

**THE BANK OF NEW YORK MELLON, FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFCATEHOLDERS OF THE CWMBS, INC.
CHL MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2007-17; NEW REZ LLC
DBA SHELLPOINT MORTGAGE SERVICING; AND
BAYVIEW LOAN SERVICING, LLC,**

            Defendants.

Order Filed on September 29, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Bankruptcy Case No.    16-28615

Chapter:    13

Adversary Case No. 22-01139

Judge:    Honorable Vincent F. Papalia

## CONSENT ORDER APPROVING SETTLEMENT, AUTHORIZING ENTRY OF A LOAN MODIFICATION, GRANTING DEBTOR/PLAINTIFF'S ATTORNEYS FEES AND DISMISSING ADVESRARY PROCEEDING WITH PREJUDICE

The relief set forth on the following pages numbered two (2) through four (4) is hereby

**ORDERED**.

**DATED: September 29, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court

Page: 2
Debtor:         **Carmen Saro**
Case No.:       **16-28615-VFP - Chapter 13**
Adv. Pro.:      **Carmen Saro v. The Bank Of New York Mellon, FKA The Bank of New
                York, As Trustee for the Certificateholders of the CWMS, Inc. CHL
                Mortgage Pass Through Certificates, Series 2007-17; New Rez LLC DBA
                Shellpoint Mortgage Servicing; and Bayview Loan Servicing, LLC**
Adv. Pro. No.: **22-01139-VFP – Adversary Proceeding**
Caption:        **Consent Order Approving Settlement, Authorizing Entry of Loan
                Modification, Granting Debtor/Plaintiff's Attorneys Fees and Dismissing
                Adversary Proceeding with Prejudice**

---

## RECITALS

This matter being opened to the Court by Ronald I. LeVine, Esq., attorney for the
Debtor/Plaintiff Carmen Saro and Ashley S. Miller, Esq., attorney for Defendants, The Bank Of
New York Mellon, FKA The Bank of New York, As Trustee for the Certificateholders of the
CWMS, Inc. CHL Mortgage Pass Through Certificates, Series 2007-17; New Rez LLC DBA
Shellpoint Mortgage Servicing; and Bayview Loan Servicing, LLC (hereinafter collectively
"Secured Creditors/Defendants") and the Parties (Debtor/Plaintiff and Secured
Creditors/Defendants) having amicably resolved any and all disputes pursuant to a Confidential
Settlement Agreement and Release (attached hereto as Exhibit "A"), Loan Modification
(attached hereto as Exhibit "B") and Debtor/Plaintiff's counsel and Secured
Creditors/Defendants' counsel, having executed their consent to the form and entry of this
Consent Order and the Court having considered Debtor/Plaintiff's Application and Proposed
Consent Order and accompanying Exhibits, and for good cause shown; it is hereby,

Page: 3
Debtor:       **Carmen Saro**
Case No.:     **16-28615-VFP - Chapter 13**
Adv. Pro.:    **Carmen Saro v. The Bank Of New York Mellon, FKA The Bank of New York, As Trustee for the Certificateholders of the CWMS, Inc. CHL Mortgage Pass Through Certificates, Series 2007-17; New Rez LLC DBA Shellpoint Mortgage Servicing; and Bayview Loan Servicing, LLC**
Adv. Pro. No.: **22-01139-VFP – Adversary Proceeding**
Caption:      **Consent Order Approving Settlement, Authorizing Entry of Loan Modification, Granting Debtor/Plaintiff's Attorneys Fees and Dismissing Adversary Proceeding with Prejudice**

---

**ORDERED,** that this Consent Order incorporates by reference the Confidential Settlement Agreement and Release and the Loan Modification Agreement both of which have been duly executed by the Parties and are attached hereto as Exhibits to this Consent Order; and it is further,

**ORDERED,** that the Loan Modification attached hereto as Exhibit "B" is hereby authorized by this Court; and it is further,

**ORDERED,** that the Debtor/Plaintiff's Attorneys' fees as set forth in the Settlement Agreement and Release, attached hereto as Exhibit "A," are hereby granted; and it is further,

**ORDERED,** that the Debtor/Plaintiff and Secured Creditors/Defendants acknowledge that the Loan Modification attached hereto as Exhibit "B," and entered into by the Parties shall not constitute a principal write-down or principal forgiveness of debt owed on the Debtor/Plaintiff's mortgage loan. Any reference in the Loan Modification, Exhibit "B" as to principal write-down or principal forgiveness were adjustments made for calculation purposes to correct accounting of the Debtor/Plaintiff's mortgage loan; and it is further,

**ORDERED,** that the Debtor/Plaintiff's Adversary Proceeding is hereby dismissed with prejudice.

Page:  4
Debtor:        **Carmen Saro**
Case No.:      **16-28615-VFP - Chapter 13**
Adv. Pro.:     **Carmen Saro v. The Bank Of New York Mellon, FKA The Bank of New York, As Trustee for the Certificateholders the CWMS, Inc. CHL Mortgage Pass Through Certificates, Series 2007-17; New Rez LLC DBA Shellpoint Mortgage Servicing; and Bayview Loan Servicing, LLC**
Adv. Pro. No.: **22-01139-VFP – Adversary Proceeding**
Caption:       **Consent Order Approving Settlement, Authorizing Entry of Loan Modification, Granting Debtor/Plaintiff's Attorneys Fees and Dismissing Adversary Proceeding with Prejudice**

---

**WE HEREBY CONSENT TO THE FORM AND ENTRY OF THIS CONSENT ORDER.**

**/s/ Ronald I. LeVine, Esq.**
**RONALD I. LEVINE, ESQ.**
**Attorney for Debtor/Plaintiff,**
**Carmen Saro**

**Dated: August 24, 2023**

**/s/ Ashley S. Miller, Esq.**
**ASHLEY S. MILLER, ESQ.**
**Attorney for Secured Creditors/Defendants**
**The Bank Of New York Mellon, FKA The Bank of New York, As Trustee for the Certificateholders of the CWMS, Inc. CHL Mortgage Pass Through Certificates, Series 2007-17; New Rez LLC DBA Shellpoint Mortgage Servicing; and Bayview Loan Servicing, LLC**

**Dated: August 24, 2023**

# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Ralph and Carmen Saro (**Borrowers**) and Newrez LLC d/b/a Shellpoint Mortgage Servicing (**NewRez**) and The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of the CWMBS, Inc., CHL Mortgage Pass Through Certificates, Series 2007-17 (**BoNYM**, and collectively with NewRez, **Lender**) enter into this confidential settlement and release agreement (**Agreement**) as of the last date identified on the signature page (**Effective Date**).    Borrowers and Lender are collectively referred to hereafter as the **Parties** and referred to individually as a **Party**.

### RECITALS

This Agreement is entered into with reference to the following facts and recitals, which are true to the best of the Parties' knowledge and belief:

A.    On May 12, 2007, Borrowers executed a $451,400 note (**Note**) in favor of Countrywide Home Loans, Inc. secured by a mortgage (**Security Instrument**) encumbering Borrowers' real property commonly known as 597 Harristown Rd, Glen Rock, NJ 07542-2313 (**Property**).    The Note, Security Instrument, and associated origination documents are collectively referred to as the **Loan Documents**, setting forth the terms of the **Loan**.

B.    The Loan was assigned to BoNYM.    Newrez is the current servicer of the Loan, which is identified by the Loan Number XXXX2674.

C.    Carmen Saro filed a voluntary Chapter 13 bankruptcy petition on or about September 29, 2016, Case No. 16-28615-VFP, in the United States Bankruptcy Court for the District of New Jersey, hereinafter referred to as the **Bankruptcy**.

D.    In the Bankruptcy, BoNYM filed a proof of claim on or about February 10, 2017.

E.    In the Bankruptcy, on or about May 11, 2018, Carmen Saro filed a motion to approve a loan modification with BoNYM.    In it, she disputed the proposed modified principal balance of the Loan.    On or about May 18, 2018, the Court entered an order conditionally approving the loan modification and directing BoNYM's servicer at the time "to respond specifically with a detailed explanation as to the apparent discrepancy between its proof of claim and the new principal balance of the loan document."

F.    In the Bankruptcy, on or about April 2, 2019, Carmon Saro filed a motion to enforce the loan modification and for sanctions.    In it Carmen Saro continued to dispute the proposed modified principal balance of the Loan.    On or about April 25, 2019, and June 3, 2019, BoNYM, through its servicer at the time, filed an Objection to this motion.

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

G.    In the Bankruptcy, on or about August 23, 2019, the Court entered an order appointing a forensic accountant and awarding Carmen Saro sanctions in the form of reasonable attorneys' fees and expenses.

H.    In the Bankruptcy, on or about December 31, 2019, Carmen Saro filed a motion objecting to the notice of payment change of the Loan.  The Court entered an order on or about February 24, 2020, finding the notice of payment change defective and awarding Carmen Saro sanctions in the form of reasonable attorneys' fees and expenses.

I.    Carmen Saro filed an adversary proceeding on or about June 7, 2022, Case no. 22-01139-VFP, in the United States Bankruptcy Court for the District of New Jersey, hereinafter referred to as the **Adversary Proceeding** (and together with the Bankruptcy, referred herein as the **Litigation)**.  Carmen Saro continued to raise certain disputes about the Loan and the Property, and in particular, the amount owed on the Loan as it related to the proposed loan modification.  The Lender filed an Answer on or about November 25, 2022.

J.    Each Party to this Agreement is fully apprised of the facts set forth in these Recitals and of the facts and contentions raised in the Litigation, and in all other aspects of the dispute between or among the Parties, whether pleaded or not, including the possibilities of each action and matter described herein.

K.    Each Party denies all allegations, claims and defenses made by the other Party in the Litigation.

L.    The Parties, without admission or concession of any fact, law, or validity of any allegation, desire to settle the claims between them related to the Loan as set forth herein, any claim Borrowers brought in the Litigation, and any claim Borrowers could have brought in the Litigation.

## TERMS AND RELEASES

In consideration of the mutual covenants and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties covenant and agree as follows:

1.    **Execution.**    Within five business days from the date requested by Lender's counsel, Borrowers shall execute this Agreement and provide Lender's counsel with a copy of the signed Agreement.

2.    **Settlement Terms.**  As full and final settlement, the Parties agree as follows:

      a.    **Approval by Bankruptcy Court.**  Within 5 business days of receipt of the fully executed Agreement, counsel for Carmen Saro in the Bankruptcy will file a motion with the Bankruptcy Court for approval of this Agreement and the Loan Modification, as defined

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro.* Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

below, or take whatever other action the Bankruptcy Court directs for approval of this Agreement and the Loan Modification.

b. **Payment by Newrez.**

    i.     **Damages Payment.** Newrez shall pay Borrowers the total sum of $15,000 (the **Damages Payment**) by check payable to Carmen Saro. Newrez shall deliver the settlement payment to Borrowers' counsel, at Ronald I. LeVine, Esq., 3 Pendleton, Road, Mahwah, NJ 07430, within thirty business days of the latter of the following events: (a) the Bankruptcy Court's approval of this Agreement and the Loan Modification; (b) receipt by Lender's counsel of one original counterpart of this Agreement executed by Borrowers; or (c) receipt by Lender's counsel of a completed, signed, and dated IRS Form W-9, in the most current version, for each payee of the Settlement Payment, as defined below.

    ii.     **Attorneys' Fees Payment.** Newrez shall pay Borrowers the total sum of $30,000 (the **Attorneys' Fees Payment**) by check payable to Ronald I. Levine Attorney Trust Account. Newrez shall deliver the settlement payment to Borrowers' counsel, at Ronald I. LeVine, Esq., 3 Pendleton, Road, Mahwah, NJ 07430, within thirty business days of the latter of the following events: (a) the Bankruptcy Court's approval of this Agreement and the Loan Modification; (b) receipt by Lender's counsel of one original counterpart of this Agreement executed by Borrowers; or (c) receipt by Lender's counsel of a completed, signed, and dated IRS Form W-9, in the most current version, for each payee of the Settlement Payment, as defined below.

    iii.     **Full Satisfaction.** The Damages Payment and the Attorneys' Fees Payment are collectively referred to herein as the **Settlement Payment**. The Settlement Payment is in full satisfaction of the released matters defined herein and is inclusive of all attorneys' fees and costs Borrowers may have incurred in connection with the Litigation, including all attorneys' fees and costs awards granted in the Litigation as outlined in the Recitals.

c.     **Loan Modification.** Borrowers agree to execute the loan modification agreement attached to this Agreement as **Exhibit A** (the **Loan Modification**) simultaneously with Borrowers' execution of this Agreement. The Parties incorporate the Loan Modification into this Agreement. Upon receipt of a counterpart

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

of this Agreement and the Loan Modification, both properly executed and notarized by Borrowers in accordance with the instructions in the modification, state law, and investor requirements, along with any required payment under the modification, Newrez shall implement the terms of the Loan Modification. Borrowers shall return two fully and properly executed original Loan Modifications to Newrez to Heather Ruth, Newrez LLC, 75 Beattie Place, Suite 300, Greenville, SC 29601. Borrowers warrant and represent that: Borrowers have the power and authority to execute, deliver, and perform their obligations under the Loan Modification; Borrowers are capable of making the monthly payment obligation required under the Loan Modification; Borrowers fully understand and comprehend the terms of the Loan Modification; Borrowers will execute the Loan Modification with the consent and on the advice of such independent legal counsel as Borrowers have retained or may retain; the execution, delivery, and performance of the Loan Modification does not require the consent or approval of any person or entity not a party to the Loan Modification; the execution, delivery, and performance of the Loan Modification does not and will not violate any provision of any law, rule, regulation, order, or decree presently in effect having applicability to Borrowers, including but not limited to the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, the Real Estate and Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, and any other applicable federal or state law or regulation; the Loan Modification constitutes a valid and legally binding obligation of Borrowers and is enforceable against Borrowers in accordance with its terms; and Borrowers waive any and all claims under or disclosures otherwise required by RESPA, TILA, or any other applicable federal or state law or regulation in any way related to the Loan Modification. Except as expressly stated in the Loan Modification, the Parties' rights and obligations as expressed in the Loan Documents remain the same. Nothing in this Agreement will be construed as contradicting the terms of the Loan Modification with respect to the modified loan terms.

i.    The Loan Modification is addressing any current escrow shortage such that at the time the Loan Modification is implemented, there shall be no escrow shortage or shortfall.

ii.    Newrez shall send for recording the Loan Modification with the County within 60 days of the latter of the Bankruptcy Court's

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

approval of this Agreement and the Loan Modification or receipt by Newrez of two properly executed originals of the Loan Modification. It shall not be a violation of this Agreement if the County does not record the Loan Modification within the 60-day period specified herein.

iii.    To the extent that the Loan Modification is implemented after the first date payment is due under the Loan Modification Newrez will ensure the proper implementation of the Loan Modification and shall implement the Loan Modification within 30 days of the latter of (a) the Bankruptcy Court's approval of this Agreement and the Loan Modification or (b) receipt by Newrez of two properly executed originals of the Loan Modification. Failure to properly implement the Loan Modification within this time period shall result in a $100.00 per day penalty to be incurred by Newrez to the Borrowers until implementation of the Loan Modification.

iv.    Newrez shall begin issuing monthly statements within 60 days of implementation of the Loan Modification, to the Borrowers at the Property address. Borrowers hereby consent to receiving such monthly statements. The sending of such statements by Lender, or its successors and assigns, shall not be in violation of any present or future discharge of the Borrowers pursuant to 11 U.S.C. § 524. The purpose of the Borrowers receiving monthly statements is to keep the Borrowers up to date on the accounting on the loan. If Borrowers wish to receive the monthly statements at an address other than the Property address, they must notify Lender, or its successors and assigns, pursuant to the terms of the Loan Documents.

v.    Newrez shall issue annual escrow statements, annual tax interest statements, and any other notices required under federal law to the Borrowers at the Property address. Borrowers hereby consent to receiving such statements. The sending of such statements by Lender, or its successors and assigns, shall not be in violation of any present or future discharge of the Borrowers pursuant to 11 U.S.C. § 524. The purpose of the Borrowers receiving these statements is to keep the Borrowers up to date on the accounting on the loan. If Borrowers wish to receive these statements at an address other than the Property address, they must notify Lender, or its successors and assigns, pursuant to the terms of the Loan Documents.

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

vi.     Aside from any fees or charges mentioned herein or in the Loan Modification attached hereto as Exhibit A, no additional fees or charges will be assessed for any matter related to the execution, closing, implementation and recording of the Loan Modification.

3.     **Dismissal with Prejudice.** Borrowers agree to dismiss with prejudice all claims asserted in the Adversary Proceeding within 30 days from the Bankruptcy Court's approval of this Agreement and the Loan Modification, and to take no further action against Lender in the Bankruptcy. From and after their execution of this Agreement, the Parties agree to take no further action to prosecute the Litigation, except to the extent necessary to obtain the Bankruptcy Court's approval of this Agreement and the Loan Modification and to wind-down and close the Bankruptcy. Borrowers and Lender authorize and direct their counsel to file a Stipulation of Dismissal with Prejudice of the Adversary Proceeding upon the terms hereof.

4.     **Bankruptcy Court's Jurisdiction.** The Bankruptcy Court will retain jurisdiction of the case for any enforcement action under this Agreement and the Loan Modification. The Parties hereby agree that they will not contest the jurisdiction of the Bankruptcy Court for the District of New Jersey to resolve any future disputes between the Parties related to any matters or things arising out of or otherwise related to this Agreement and the Loan Modification, but the Parties agree the Bankruptcy Court for the District of New Jersey does not retain exclusive jurisdiction regarding disputes about this Agreement, the Loan Modification, or the Loan.

5.     **Borrowers' Release.** In consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, Borrowers, for themselves and each of their present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (collectively **Releasors**) unconditionally and irrevocably remise, waive, satisfy, release, acquit, and forever discharge BoNYM and Newrez and their present, former and future parents, predecessors, successors, assigns, assignees, affiliates, subsidiaries, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, servicers, sub-servicers, nominees, agents (alleged, apparent or actual), representatives, employees, managers, administrators, and/or each person or entity acting or purporting to act for or on behalf of Newrez and/or BoNYM, as well as any past, present or future person or any entity that held or holds any interest in the Loan (collectively **Releasees**), and each of them respectively, from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits,

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro.* Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.,* Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever that Releasors, or their attorneys, agents, representatives, predecessors, successors and assigns, have against Releasees, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity, including, without limitation, the claims Borrowers made or which they could have made arising from the origination or servicing of the Loan as well as in any way related to the Property, Note, or Security Instrument, any servicing act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation, including, without limitations, all claims and issues addressed in the Recitals (collectively, the **Released Matters**). In addition, Borrowers covenant not to sue Newrez, BoNYM, or any other person or entity, for any claim Borrowers have or may have had as of the Effective Date, relating to or arising out of the Loan, the Property, the Litigation, or the matters mentioned in the Recitals herein. It is the intention and effect of this release to discharge all claims that the Releasors have against the Releasees up until and including the date of the execution of this Agreement.

6.    **Release of Unknown Claims.**  Borrowers acknowledge that they may hereafter discover facts different from, or in addition to, those which they now claim or believe to be true with respect to the claims released herein, and agree that this Agreement shall remain effective in all respects notwithstanding the discovery of such different or additional facts. Borrowers expressly waive any right to assert hereafter that any claims were excluded from this Agreement through ignorance, oversight, error, or otherwise. Borrowers agree that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

7.    **Release by Newrez.**  Except as to Borrowers' continuing obligations under the Loan (and any modification thereof set forth herein) or any other loan not involved in this Litigation, and subject to and conditional upon the obligations of this Agreement, Newrez releases Borrowers from all claims, liabilities, actions, causes of action, demands, rights, damages, costs, and attorneys' fees in the Litigation, or which it could have made in the Litigation, as of the Effective Date.

8.    **Release Limitations.**  This Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; and (2) any future disputes between Borrowers and Newrez and/or BoNYM, including their successors and assigns, which arise out of or relate to the Parties' continuing relationship under the Loan.

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro.* Case No. 16-28615-VFP. United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

9.    **Opportunity to Cure.** Borrowers recognize that Newrez and BoNYM are both large organizations and Newrez services a large number of loans. Borrowers therefore understand Lender's reasonable efforts will be applied to the obligations created by this Agreement but that some temporary, inadvertent errors may occur. In the event of any such errors by Lender, Borrowers agree to provide prompt and clear notice to Newrez and/or BoNYM, and to allow it a reasonable opportunity to cure the error. Provided Lender cures such error(s) after notice by Borrowers (which notice shall be a condition precedent to any liability), such errors shall not constitute a material breach under this Agreement.

10.    **Non-Disparagement.** Borrowers agree that they will not make any disparaging statements against the Releasees maligning, ridiculing, defaming, speaking ill of, or otherwise portraying in a negative light the Releasees, and their business affairs, practices or policies, standards, or reputation (including but not limited to statements or postings harmful to the releasees' business interests, reputation or good will) in any form (including but not limited to orally, in writing, on any social media, blogs, internet, to the media, persons and entities engaged in radio, television or Internet broadcasting, or to persons and entities that gather or report information on trade and business practices) that relate to this Agreement and the factual allegations made in the Litigation or any matter covered by the release within this Agreement.

11.    **Warranties and Representations.** The Parties hereto warrant and represent that he, she, or it is the sole owner of all rights, claims, damages, actions, causes of action, suits and defenses, as the case may be, at law or in equity, he, she, or it has or may have or that were asserted or could have been asserted in the action; and he, she, or it has not assigned, transferred, conveyed, or purported to assign, transfer, or convey to any person or entity any right, claim, action, cause of action, suit (at law or in equity), defense, demand, debt, liability, account, or obligation herein released, or any part thereof, or which would, absent such assignment, transfer or conveyance, be subject to the releases set forth in this Agreement.

12.    **Acknowledgments.** Each of the Parties acknowledge and agree that:

a.    This Agreement is entered into and executed voluntarily by each of the Parties hereto and without any duress or undue influence on the part of, or on behalf of, any such Party.

b.    Each of the Parties hereto has been represented by counsel of its/their own choice, or has had the opportunity to be represented by counsel and to seek advice in connection with the negotiations for, and in the preparation of, this Agreement and that he, she, or it has read this Agreement and that he, she or it is fully aware of its contents and legal effects. All Parties who are representing themselves are warned to obtain the advice of an attorney before signing this Agreement.

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

    c.    The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all of the Parties hereto with no presumption in favor of one Party over another in the event of any ambiguity.

    d.    The captions and headings within this Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreement.

    e.    The consideration received in connection with this Agreement is fair, adequate, and substantial, and it consists only of the terms set forth in this Agreement.

13.    **Additional Actions.** The Parties agree to take any additional actions reasonably necessary to effectuate this Agreement, including the timely execution and delivery of any documents needed to effectuate the provisions of this Agreement.

14.    **Notice from Borrowers Regarding Implementation.** Certain terms of the Agreement may require action on the part of Newrez and/or BoNYM for purposes of implementing the Agreement including without limitation Newrez adjusting the terms and conditions of the Loan, including payment obligations. As a result, and as a material term of the Agreement, Borrowers will advise Lender's counsel in writing (the **Notice of Failure**) prior to filing suit or seeking other relief related to implementation by Lender. Upon receipt of the Notice of Failure, Lender shall have forty-five (45) days to review the content of the notice and to resolve the issue, if necessary. If at end of the 45-day period, the Borrowers continue to believe that Lender has continued to fail to implement the terms of the Agreement, Borrowers may file suit or seek other relief to enforce the terms of this Agreement.

15.    **Waiver of Trial by Jury.** Borrowers knowingly, voluntarily and intentionally waive any right they may have to a trial by jury with respect to any litigation based hereon, or arising out of, under or in connection with this Agreement, any document contemplated to be executed, or any underlying matter, course of dealing, statement (whether verbal or written) or action of the Parties.

16.    **Tax Consequences.** Borrowers agree and understand they are solely responsible for payment of any income taxes or other taxes on any benefit obtained from this Agreement. Borrowers affirm and acknowledge neither Lender nor its counsel has made any representations or given any advice about any potential tax consequence of this Agreement, and they have not relied upon any such representation or advice from Lender or its counsel. Borrowers understand Lender will comply with all tax reporting requirements under state and federal law. However, neither Newrez nor BoNYM, nor any agent, servant and/or employee or representatives of Newrez or BoNYM, will assert

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

any position, verbally or in writing, that the settlement and loan modification provided for herein is cancellation of debt pursuant to the Internal Revenue Code Section 108 and will not issue a Form 1099-C. If a Form 1099-C is inadvertently issued, counsel for the Borrowers shall contact counsel for Lender, Akerman LLP (Ashley S. Miller, Esq. or any other attorney at Akerman LLP, 1251 Avenue of the Americas, 37th Floor, New York, NY 10020) who will have the necessary corrections completed within 30 days. The Borrowers must notify counsel for Lender and allow this 30-day cure period before taking any other action with regards to any violation of this paragraph, including legal action.

17.    **Attorneys' Fees.** Unless otherwise expressly set forth herein, each of the Parties shall bear their own attorneys' fees, costs and expenses incurred in connection with the matters set forth in this Agreement, including but not limited to, the Litigation and the negotiations and preparation of this Agreement.

18.    **Compromise of Disputed Claims.** It is understood and agreed that this Agreement is the compromise of disputed claims, and that the terms of settlement contained herein, and the releases executed are not intended to be and shall not be construed as admissions of any liability or responsibility whatsoever and each released Party expressly denies any liability or responsibility whatsoever. This Agreement shall not be admissible in any lawsuit, administrative action, or any judicial or administrative proceeding if offered to show, demonstrate, evidence, or support a contention the Parties acted illegally, improperly, or in breach of law, contract, or proper conduct.

19.    **Binding on Successors.** This Agreement shall be binding on, and shall inure to the benefit of, the Parties hereto and their respective administrators, representatives, successors, and assigns.

20.    **Entire Agreement.** This Agreement contains the entire understanding and agreement between the Parties with respect to the matters referred to herein. No other representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein shall be deemed in any way to exist or bind any of the Parties. Except, this provision does not apply to the Loan, Note, or Security Instrument at issue herein unless they have been otherwise invalidated or modified by the terms of this Agreement or to any other loan agreement between the Parties not related to the subject matter of the Agreement.

21.    **Modification.** This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this Agreement, but rather this Agreement may be amended only by an agreement in writing signed by the Parties.

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro.* Case No. 16-28615-VFP. United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.,* Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

22.    **Waiver.**  The failure of either Party to demand performance of any act under the Agreement from the other Party shall not be construed as a waiver of any right to demand, at any subsequent time, such performance.

23.    **Counterparts.**    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which shall constitute one agreement to be effective as of the Effective Date.  Photocopies or electronically delivered copies of executed copies of this Agreement may be treated as an original.

24.    **Severability.**  If any of the provisions of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions shall not be affected thereby.

25.    **Choice of Law.**  This Agreement shall be interpreted, enforced, and controlled under the laws of the state of New Jersey and any question arising hereunder shall be construed or determined according to such law.


[The rest of this page remains intentionally blank.  The signature pages follow.]

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro*, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey
*Carmen M. Saro v. The Bank of New York Mellon et al.*, Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey
70807480;1

IN WITNESS WHEREOF, each of the Parties hereto has executed this Agreement on the date set forth opposite his, her, or its name below. **The undersigned hereby certify that they have read and fully understand all of the terms, provisions, and conditions of this Agreement and have executed this Agreement voluntarily.**

Dated: _July 30_____, 2023

_Carmen Saro_____
Borrower: Carmen Saro

Dated: _7/30/23____, 2023

_Ralph Saro_____
Borrower: Ralph Saro

Dated: __8/2_____, 2023

_Heather G Ruth_____
Newrez LLC d/b/a Shellpoint Mortgage Servicing

Name: _Heather G Ruth_____

Title: _Corporate Counsel_____

Dated: __8/2_____, 2023

_Heather G Ruth_____
Newrez LLC d/b/a Shellpoint Mortgage Servicing as Attorney in Fact for The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of the CWMBS, Inc., CHL Mortgage Pass Through Certificates, Series 2007-17

Name: _Heather G Ruth_____

Title: _Authorized Representative_____

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE
Loan Number: XXXX2674 | BORROWER: Ralph and Carmen Saro
*In re Carmen Saro, Case No. 16-28615-VFP, United States Bankruptcy Court for the District of New Jersey*
*Carmen M. Saro v. The Bank of New York Mellon et al., Case no. 22-01139-VFP, United States Bankruptcy Court for the District of New Jersey*
70807480;1

# EXHIBIT B



**P.O. Box 10826**
**Greenville, SC 29603**

Phone Number: 800-365-7107
Fax: 866-467-1137
e-Mail: LossMitigation@Shellpointmtg.com

Monday - Thursday: 8:00AM-9:00PM
Friday: 8:00AM-9:00PM

6/05/2023

RALPH SARO
CARMEN SARO
597 HARRISTOWN RD
GLEN ROCK, NJ 07452

**Loan #:** 0579482674
**Property Address:** 597 HARRISTOWN RD
GLEN ROCK, NJ 07452

Dear Borrower(s):

**Congratulations, you are eligible for a Loan Modification, which will permanently change the terms of your mortgage!** If you comply with the terms of the Period Plan, we will modify your mortgage loan and may waive all prior late charges that remain unpaid.

The enclosed Modification Agreement ("Loan Modification Agreement") reflects the proposed terms of your modified mortgage.

**To Accept this Offer:**

**STEP 1**  **COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

☑ **Sign and return** the original version of the Loan Modification Agreement back to us in the enclosed, pre-paid envelope by **6/19/2023**. If you do not send the signed original version of the Loan Modification Agreement by the above date, you must contact us if you still wish to be considered for a modification.

- If the Loan Modification Agreement has notary provisions at the end, you must sign the original version before a notary public and return the notarized original version to us.
- We encourage you to make a copy of all documents for your records.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO BE A WAIVER OF THE BORROWER'S DISCHARGE, AN ATTEMPT TO COLLECT AGAINST THE BORROWER PERSONALLY, OR AN ATTEMPT TO REVIVE PERSONAL LIABILITY.

Don't delay—take advantage of this great offer by **6/19/2023**.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

*Attachments: Summary of Your Modified Mortgage, Modification Agreement*                          1028

If you are a successor in interest, then in order to complete the Modification, we will need one of the following sets of documents – Death Certificate and Executed Will or Court Order; Recorded Instrument proving Tenancy by the Entirety or Joint-Tenancy (so long as the jurisdiction does not require a Probate Court to establish a successor); an Affidavit of Heirship and a Death Certificate (so long as the jurisdiction does not require a Probate Court to establish a successor); a Property Agreement filed incident to a divorce proceeding (so long as the jurisdiction does not require a Deed conveying the interest in the property); or Evidence of a Quit Claim Deed transferred from living spouse or parent.

| **SUMMARY** | Here is a summary of your modified mortgage. |

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we will forgive a portion of your outstanding principal equal to $120,055.46. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**INTEREST RATE.** The interest rate on your modified loan may be adjusted. If it is adjusted, it will be as noted in the attached Modification Agreement in Section 3.C. If it is not adjusted, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached Modification Agreement.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums, and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Shellpoint will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Shellpoint must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $1,725.35. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $4,856.60. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.**

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan.

**FEES.** There are no fees or other charges for this modification.

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents**: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您 要使用英语 以外的其他语 言进 行交流 请 致电 800-365-7107，我们 将根据您 首选 的语 言安排相应 的译 员，与您 就贷 款服务 事项 或您 所接收的文件进 行商讨。**

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Agreement Checklist**
**For Your Information Only - Do Not Return with Your Agreement**

GET STARTED – use this checklist to ensure you have completed all required forms and have the right information.

| Step 1 | ❑ | **Fully sign the original. EVERYONE named on the title and/or loan must sign the agreement. Check every page for needed signatures.**<br>**\*Note: If anyone should not be listed on the mortgage, you must include supporting documentation,** such as a Quit Claim Deed, Divorce Decree, or Death Certificate. |
|---|---|---|
| Step 2 | ❑ | **Return every page. Return all pages of the original, including any disclosures, fully signed.** |
| Step 3 | ❑ | **Return unedited originals. Make sure that you do not cross-out, white out, edit, or alter the Agreement(s) in** any way. |
| Step 4 | ❑ | **Sign and send the most recent agreement(s). If you received multiple versions, be sure to send the one with** the most recent date. |
| Step 5 | ❑ | **Notarize the original.**<br>• **Dates must match the date signed must be the date notarized**<br>• **No white-outs or corrections on the agreement(s)**<br>• **The notary cannot also be the witness**<br>• **The notary name must be typed or printed below signature**<br>• **The notary must write "Notary Public" after his or her name**<br>• **The notary commission expiration date must be listed**<br>• **Notary seal/stamp must be legible and not overlap text or signatures** |
| Step 6 | ❑ | **Gather and send completed documents in the return envelope that is provided.** |

**IMPORTANT REMINDERS:**
- ☐ If you cannot provide the documentation within the time frame provided, please contact us at 800-365-7107.
- ☐ Keep a copy of all documents and proof of mailing/emailing for your records.

**Questions? Contact us at 800-365-7107.**

Upon recording return to:
Shellpoint Mortgage Servicing
75 Beattie Place Suite LL202
Greenville, SC 29601

_____[Space Above This Line For Recording Data]_____

## BALLOON MODIFICATION AGREEMENT

Borrower ("I"):[1] RALPH SARO and CARMEN SARO
Lender or Servicer ("Lender"): Newrez LLC D/B/A Shellpoint Mortgage Servicing as Attorney
in Fact for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS
TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE
PASS-THROUGH TRUST 2007-17, MORTGAGE PASS THROUGH CERTIFICATES,
SERIES 2007-17
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note: 2007-05-12
Loan Number: 0579482674
Property Address ("Property"):597 HARRISTOWN RD , GLEN ROCK, NJ 07452

If my representations and covenants in Section 1 continue to be true in all material respects, then
this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The
Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning
given to them in Loan Documents.

I understand that after I sign and return the original versions of this Agreement to the Lender, the
Lender will send me a signed copy of this Agreement. This Agreement will not take effect
unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under
        the Loan Documents or my default is imminent, and (ii) I do not have sufficient
        income or access to sufficient liquid assets to make the monthly mortgage
        payments now or in the near future.

   B.   One of the borrowers signing this Agreement lives in the Property as a principal
        residence, and the Property has not been condemned.

   C.   There has been no impermissible change in the ownership of the Property since I
        signed the Loan Documents. A permissible change would be any transfer that the
        lender is required by law to allow, such as a transfer to add or remove a family
        member, spouse or domestic partner of the undersigned in the event of a death,
        divorce or marriage.

   D.   I/We, RALPH SARO and CARMEN SARO, received a discharge in a bankruptcy
        proceeding after signing the Note and Mortgage/Deed of Trust. I and the Lender
        acknowledge and agree that this Agreement is not an attempt to collect, recover,
        enforce, or offset this indebtedness against me personally, does not affect the
        discharge of my personal liability, and shall not be construed as a waiver of the
        discharge or an attempt to revive personal liability for this indebtedness. I
        understand that I am not obligated to enter into this Agreement and that I am
        entering into this Agreement voluntarily and with no coercion or pressure from
        the Lender, for the sole purpose of retaining the Property. I and the Lender
        acknowledge and agree that the Mortgage/Deed of Trust is an enforceable lien on
        the Property, that this Agreement shall not prejudice the lien in any way, and that
        the Lender's sole recourse is the enforcement of its lien on the Property and any
        action which may exist in relation to the Property itself.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B. The Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date, as set forth in Section 3, has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 6/1/2023 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 6/1/2023.

   A. The Maturity Date will be: 6/1/2037.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $590,507.85 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $120,055.46 of the New Principal Balance shall be Principal Forgiveness and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Principal Forgiveness shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $470,452.39. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 05/01/2023 and the first new monthly payment on the <u>Interest Bearing</u> Principal Balance will be due on 06/01/2023. My    payment    schedule    for    the    modified  <u>  Loan  is  </u>  as    follows

| Number of Monthly Payments | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 60 | 2.000% | 5/1/2023 | $1,424.65 | $1,725.35, may adjust periodically | $3,150.00, may adjust periodically | 6/1/2023 |
| 12 | 3.000% | 5/1/2028 | $1,665.11 | May adjust periodically | May adjust periodically | 6/1/2028 |
| 12 | 4.000% | 5/1/2029 | $1,898.38 | May adjust periodically | May adjust periodically | 6/1/2029 |
| 85 | 4.375% | 5/1/2030 | $1,991.86 | May adjust periodically | May adjust periodically | 6/1/2030 |

\*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default, the interest that will be due will be the rate set forth in Section 3.C.

F. My monthly principal and interest payment for the New Principal Balance reflects amortization of principal over 40 years from the date of my first modification payment. However, the scheduled maturity date of my loan will remain unchanged. This means that, even if I make all of the scheduled payments on time and comply with all other terms of the modified loan agreement, a principal balance of $370,170.07 will remain unpaid at the time of the scheduled maturity date. This balance will accrue interest at the Note rate and is sometimes called a balloon payment; I will need to make arrangements to pay this remaining balance when I pay off my loan, when I transfer an interest in, refinance or sell the Property.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE A PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH THE NEW LOAN, EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4. **Additional Agreements.** I understand and acknowledge that:

A. All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the Divorce Decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing.

B. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. I must comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. This Agreement constitutes notice that the Lender's waiver as to payment of escrow items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. The Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. As of the Modification Effective Date, the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income,

payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s) (iv)companies that perform support services for the Modification Program and the Second Lien Modification Program and (v) any HUD certified housing counselor.

N. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. The mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Space Below this Line for Individual Acknowledgement

_____ (Seal) _02/30/23_ (Date)
**RALPH SARO**

_____ (Seal) _July 30, 2023_ (Date)
**CARMEN SARO**

Signed, acknowledged and delivered in the presence of:

Witness _____ (Seal)
Witness _____ (Seal)

State of _New Jersey_

County of _Bergen_

I certify that the following person(s) _Ralph Saro_ and
_Carmen Saro_ personally appeared before me this _30_ day of
_July_, 20_23_, and [ ] I have personal knowledge of the identity of the principal(s), [X]
I have seen satisfactory evidence of the principal's identity, by a current state or federal
identification evidence of the principal's identity photograph in the form of a
_NJ Drivers License_, or [ ] credible witness has sworn to the identity of the principal(s);
each acknowledging to me that he or she voluntarily signed the foregoing document for the
purpose stated therein and in the capacity indicated:

Witness my hand and official seal this _30_ day of _July_, 20_23_

Notary Signature _____ Notary Public (Seal)

Witness _Virginia E. Intenat_ (Seal)

Typed/Printed Name: _Cari L. Salcedo_
Notary Public, State of: _New Jersey_
(VA Notaries) Reg. No.: _____
My Commission Expires: _Nov. 18, 2025_

(Official Seal)

CARI L SALCEDO
Notary Public - State of New Jersey
My Commission Expires Nov 18, 2025

Upon recording return to:
Shellpoint Mortgage Servicing
75 Beattie Place Suite LL202
Greenville, SC 29601

_____[Space Above This Line For Recording Data]_____

## BALLOON MODIFICATION AGREEMENT

Borrower ("I"):[1] RALPH SARO and CARMEN SARO
Lender or Servicer ("Lender"): Newrez LLC D/B/A Shellpoint Mortgage Servicing as Attorney
in Fact for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS
TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE
PASS-THROUGH TRUST 2007-17, MORTGAGE PASS THROUGH CERTIFICATES,
SERIES 2007-17
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note: 2007-05-12
Loan Number: 0579482674
Property Address ("Property"):597 HARRISTOWN RD , GLEN ROCK, NJ 07452

If my representations and covenants in Section 1 continue to be true in all material respects, then
this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The
Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning
given to them in Loan Documents.

I understand that after I sign and return the original versions of this Agreement to the Lender, the
Lender will send me a signed copy of this Agreement. This Agreement will not take effect
unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under
the Loan Documents or my default is imminent, and (ii) I do not have sufficient
income or access to sufficient liquid assets to make the monthly mortgage
payments now or in the near future.

    B.    One of the borrowers signing this Agreement lives in the Property as a principal
residence, and the Property has not been condemned.

    C.    There has been no impermissible change in the ownership of the Property since I
signed the Loan Documents.  A permissible change would be any transfer that the
lender is required by law to allow, such as a transfer to add or remove a family
member, spouse or domestic partner of the undersigned in the event of a death,
divorce or marriage.

    D.    I/We, RALPH SARO and CARMEN SARO, received a discharge in a bankruptcy
proceeding after signing the Note and Mortgage/Deed of Trust. I and the Lender
acknowledge and agree that this Agreement is not an attempt to collect, recover,
enforce, or offset this indebtedness against me personally, does not affect the
discharge of my personal liability, and shall not be construed as a waiver of the
discharge or an attempt to revive personal liability for this indebtedness. I
understand that I am not obligated to enter into this Agreement and that I am
entering into this Agreement voluntarily and with no coercion or pressure from
the Lender, for the sole purpose of retaining the Property. I and the Lender
acknowledge and agree that the Mortgage/Deed of Trust is an enforceable lien on
the Property, that this Agreement shall not prejudice the lien in any way, and that
the Lender's sole recourse is the enforcement of its lien on the Property and any
action which may exist in relation to the Property itself.

---
[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed. the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents.

   B.  The Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date, as set forth in Section 3, has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 6/1/2023 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on 6/1/2023.

   A.  The Maturity Date will be: 6/1/2037.

   B.T  he modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $590,507.85 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C.  $120,055.46 of the New Principal Balance shall be Principal Forgiveness and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Principal Forgiveness shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $470,452.39. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 05/01/2023 and the first new monthly payment on the <u>Interest Bearing</u> Principal Balance will be due on 06/01/2023. My    payment    schedule    for    the    modified    <u>Loan    is</u>    as    follows

| Number of Monthly Payments | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 60 | 2.000% | 5/1/2023 | $1,424.65 | $1,725.35, may adjust periodically | $3,150.00, may adjust periodically | 6/1/2023 |
| 12 | 3.000% | 5/1/2028 | $1,665.11 | May adjust periodically | May adjust periodically | 6/1/2028 |
| 12 | 4.000% | 5/1/2029 | $1,898.38 | May adjust periodically | May adjust periodically | 6/1/2029 |
| 85 | 4.375% | 5/1/2030 | $1,991.86 | May adjust periodically | May adjust periodically | 6/1/2030 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default, the interest that will be due will be the rate set forth in Section 3.C.

F.  My monthly principal and interest payment for the New Principal Balance reflects amortization of principal over 40 years from the date of my first modification payment. However, the scheduled maturity date of my loan will remain unchanged. This means that, even if I make all of the scheduled payments on time and comply with all other terms of the modified loan agreement, a principal balance of $370,170.07 will remain unpaid at the time of the scheduled maturity date. This balance will accrue interest at the Note rate and is sometimes called a balloon payment; I will need to make arrangements to pay this remaining balance when I pay off my loan, when I transfer an interest in, refinance or sell the Property.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE A PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH THE NEW LOAN. EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4.  **Additional Agreements**.  I understand and acknowledge that:

A.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the Divorce Decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents), or (iii) the Lender has waived this requirement in writing.

B.  This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  I must comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. This Agreement constitutes notice that the Lender's waiver as to payment of escrow items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. The Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. As of the Modification Effective Date, the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income,

payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s) (iv)companies that perform support services for the Modification Program and the Second Lien Modification Program and (v) any HUD certified housing counselor.

N. If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. The mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

.

Space Below this Line for Individual Acknowledgement

_____ (Seal) 07/30/23 (Date)
**RALPH SARO**

_____ (Seal) July 30, 2023 (Date)
**CARMEN SARO**

Signed, acknowledged and delivered in the presence of:

Witness _Virginia E. Furlani___ (Seal)
Witness _Katelin___ (Seal)

State of _New Jersey___

County of _Bergen___

I certify that the following person(s) _Ralph Saro___ and
_Carmen Saro___ personally appeared before me this _30_ day of
_July_ , 20 _23_, and [ ] I have personal knowledge of the identity of the principal(s), [✗]
I have seen satisfactory evidence of the principal's identity, by a current state or federal
identification evidence of the principal's identity photograph in the form of a
_NJ Drivers License_, or [ ] credible witness has sworn to the identity of the principal(s);
each acknowledging to me that he or she voluntarily signed the foregoing document for the
purpose stated therein and in the capacity indicated:

Witness my hand and official seal, this _30_ day of _July_ , 20 _23_

Notary Signature _Isabel Notary Public_ (Seal)

Witness _Virginia C. Furlani___ (Seal)

Typed/Printed Name: _Cari L. Salcedo_        (Official Seal)
Notary Public, State of: _New Jersey_
(VA Notaries) Reg. No.: _____
My Commission Expires: _Nov. 18, 2025_

CARI L SALCEDO
Notary Public - State of New Jersey
My Commission Expires Nov 18, 2025

MULTISTATE MODIFICATION AGREEMENT – Single Family – *(page 6 of 6 pages)*